UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
------------------------------------------------------------------------ X   Docket No.:
SHAQUAN SNIPES,

                                Plaintiff,

     -against-

PASSAIC COUNTY, PASSAIC COUNTY BOARD OF CHOSEN FREEHOLDERS, individually and in their official capacities, OFFICE OF THE PASSAIC COUNTY SHERIFF'S DEPARTMENT, PASSAIC COUNTY JAIL, PASSAIC COUNTY JAIL WARDEN MICHAEL TOLERICO, individually and in his official capacity, and PASSAIC COUNTY JAIL CORRECTIONAL OFFICER JOHN/JANE DOES #1-25 (fictitiously named), individually and in their official capacities,

                                Defendants.
------------------------------------------------------------------------ X

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, SHAQUAN SNIPES, by and through his attorneys, The Russell Friedman Law Group, LLP, complaining of Defendants, PASSAIC COUNTY, PASSAIC COUNTY BOARD OF FREEDOLDERS, individually and in their official capacities, OFFICE OF THE PASSAIC COUNTY SHERIFF'S DEPARTMENT, PASSAIC COUNTY JAIL, PASSAIC COUNTY JAIL WARDEN MICHAEL TOLERICO, individually and in his official capacity, and PASSAIC COUNTY JAIL CORRECTIONAL OFFICER JOHN/JANE DOES #1-25, individually and in their official capacities, alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for deprivation of Plaintiff's civil rights, committed by Defendants while acting in concert and under color of state law, of Plaintiff's rights, liberties, and immunities as guaranteed to him by reason of the Frist, Eighth, and Fourteenth Amendments to the United

States Constitution. This Court is authorized to grant Plaintiff relief under 42 U.S.C. §§ 1983 and 1988.

## JURISDICTION

2. Jurisdiction in this matter is invoked in accordance with 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

## VENUE

3. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b) since all of the events and omissions giving rise to Plaintiff's claims occurred within Passaic COUNTY in the District of New Jersey; the actual place of employment of all of the individual Defendants is Passaic COUNTY in the District of New Jersey; and Passaic COUNTY is within the jurisdiction of the District of New Jersey.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4. Plaintiff has fulfilled the requirements of the Prison Litigation Reform Act, 42, U.S.C. § 1997(e)(a), requiring inmates to exhaust available, administrative remedies prior to filing suit under 42 U.S.C. § 1983 alleging violations of their constitutional rights.

## PARTIES

5. Plaintiff, SHAQUAN SNIPES (hereinafter, "SNIPES" or "Plaintiff"), a citizen of the United States who resided and still resides at the Passaic COUNTY JAIL.

6. Defendant PASSAIC COUNTY (hereinafter, "COUNTY") is a municipal subdivision of the State of New Jersey, duly existing by reason of and pursuant to the laws of the State of New Jersey. The COUNTY oversees Passaic County Jail operations through the Passaic County Sheriff's Department. Under applicable federal and state law, the COUNTY is responsible for the conduct of its governmental subdivisions, including Passaic County Jail and the Passaic

County Sheriff's Department.

7. Defendant PASSAIC COUNTY BOARD OF CHOSEN FREEHOLDERS (hereinafter, the "BOARD"), who are being sued in their individual and official capacities, is the governing body of Passaic COUNTY. Composed of seven elected members, the BOARD discharges both executive and legislative responsibilities, including making all finding decisions and appropriating (or failing to appropriate) money for Passaic County Jail, pursuant to N.J. Stat. § 40:20-1.

8. Defendant, OFFICE OF THE PASSAIC COUNTY SHERIFF'S DEPARTMENT (hereinafter, "SHERIFF'S DEPARTMENT") is an agency, subdivision, and/or instrumentality of the COUNTY and has an office at 435 Hamburg Turnpike, Wayne, NJ 07470. The SHERIFF'S DEPARTMENT is the chief law enforcement body of Passaic COUNTY. Thorough its Corrections Division, the SHERIFF'S DEPARTMENT staffs the Passaic County Jail with correction officers who, pursuant to policy set by the Passaic County Jail administration, oversee virtually every aspect of the inmates' confinement.

9. Defendant, PASSAIC COUNTY JAIL (hereinafter, "JAIL") is an agency, subdivision, and/or instrumentality of the COUNTY and is located at 11 Marshall Street, Paterson, NJ 07501.

10. Upon information and belief, at all relevant times described herein, Defendant COUNTY, by its agents and/or employees, operated, maintained, and controlled the SHERIFF'S DEPARTMENT and the JAIL, including all officers thereof.

11. Defendant, PASSAIC COUNTY JAIL WARDEN MICHAEL TOLERICO ("WARDEN TOLERICO"), was the warden of JAIL who is being sued in his individual and official capacity. Upon information and belief, at all relevant times described herein, WARDEN

TOLERICO was acting under color of state law within the scope of his employment as the warden employed by Defendants COUNTY, SHERIFF'S DEPARTMENT, and/or JAIL. WARDEN TOLERICO was the administrative head of the JAIL and was responsible for its daily management, maintenance, and operation, as well as for training and disciplining employees.

12. Defendant, PASSAIC COUNTY JAIL CORRECTIONAL OFFICER JOHN/JANE DOES #1-25 (hereinafter, "CO DOES") are/were yet unidentified correctional officers at the JAIL who are being sued in their individual and official capacities. Upon information and belief, at all relevant times described herein, CO DOES were acting under color of state law within the scope of their employment as correctional officers employed by Defendants COUNTY, SHERIFF'S DEPARTMENT, and/or JAIL.

## STATEMENT OF RELEVANT FACTS

13. Plaintiff SNIPES is a 23-year-old inmate who currently resides at Passaic County JAIL, located at 11 Marshall Street, Paterson, NJ 07501.

14. Commencing on or about April 2020 and continuing through present, Plaintiff has had to endure overcrowding conditions at the JAIL, denial of recreation time, denial of religious meals, denial of religious observance, denial of medical attention, and being subjected to exorbitant time in isolation and in the Special Detention Unit ("SDU").

15. On information, many of the problems at the JAIL stem from the continued and deliberative long-standing policy on the part of Defendants to cram as many prisoners as possible into the JAIL.

16. The overcrowding conditions at the JAIL violate regulations governing correctional facilities, which are set forth in the New Jersey Administrative Code. N.J.A.C. 10A:31-3.6 (b) and (g).

17. The overcrowding at the JAIL has resulted in conditions which pose a substantial and ongoing risk to inmates' physical and mental health.

18. Plaintiff was forced to endure squalid and unhygienic living conditions because of the overcrowding.

19. In addition, Plaintiff was forced to endure an inordinate amount of time in isolation and/or SDU without just cause and/or review. He was not permitted recreation time and/or contact with family and/or friends. Moreover, he was not afforded process by which to either grieve or appeal his SDU designation.

20. The overcrowding conditions also created the additional health risk of Plaintiff contracting COVID-19. In point of fact, on information, the JAIL took no additional precautions against the spread of COVID-19. The JAIL did not provide and/or require the wearing of face masks. As a result, Plaintiff contracted COVID-19.

21. After Plaintiff contracted COVID-19, he was not provided medical attention. Plaintiff was simply left in his cell in isolation for over two weeks without being seen by medical professionals. At times, he was not even provided with sufficient water and/or fluids to hydrate.

22. Plaintiff has also been denied Halal meals. In many instances, Plaintiff's meals would be brought unsealed and/or with missing food and/or spoiled food. On information, this was deliberatively done by the CO DOES in retaliation for Plaintiff grieving his conditions of confinement.

23. Plaintiff has also been deprived of the ability to practice essential elements of his religion. Plaintiff has been routinely denied the ability to attend services and/or gather for weekly Friday afternoon prayers.

24. Upon information and belief, Defendants are aware of the practice of denying

inmates the opportunity to observe their religious faiths and either participate in it or are deliberately indifferent to it. Also, upon information and belief, Defendants have failed to adopt the policies or provide the training and oversight necessary to ensure that correction officers are not perpetuating this unlawful pattern of behavior.

25. The appalling conditions of confinement are well-known to Defendants and have been for decades. In addition to the consistent barrage of complaints from inmates, the media, advocacy groups, and lawyers, the conditions have been the frequent comment by judges in this Court.

26. By allowing such policies, practices, and customs to come into existence, to continue, and to persevere constituted deliberative indifference on the part of Defendants.

27. The significant pattern of similar constitutional violations at the JAIL signified a need to train and to supervise.

28. Defendants COUNTY, the BOARD, SHERIFF'S DEPARTMENT, and WARDEN TOLERICO (collectively "MUNICIPAL DEFENDANTS") failed to train and to supervise or to adequately train and to adequately supervise JAIL staff, including corrections officers and medical staff, amounting to deliberative indifference to the constitutional rights of JAIL inmates, including Plaintiff SNIPES.

29. There was an obvious need for such training to avoid the violation of Plaintiff SNIPES' (and other inmates') constitutional rights, and the MUNICIPAL DEFENDANTS failed to correct the situation regarding this need for training.

30. There was a pattern of similar constitutional violations by untrained or improperly trained employees and agents of the aforesaid MUNICIPAL DEFENDANTS.

31. There was a direct causal link between the aforesaid inadequate training and the

deprivation of Plaintiff SNIPES' constitutional rights.

32. The MUNICIPAL DEFENDANTS failed to establish a policy or practice that would protect Plaintiff SNIPES (and other JAIL inmates) against conditions at the JAIL, deficient health and medical care and constitutional violations.

## COUNT I
### (Violation of the Fourteenth Amendment)

33. Plaintiff repeats, realleges, and reiterates each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

34. The Due Process Clause of the Fourteenth Amendment affords pretrial detainees at least the same rights as those afforded convicted prisoners, if not greater rights. In light of the totality of the circumstances discussed in detail above, Defendants - acting under color of state law - have subjected Plaintiff to conditions of confinement that expose Plaintiff to a substantial risk of serious physical and psychological harm and, as such, constitute unlawful punishment in violation of the Fourteenth Amendment.

35. Defendants are either themselves directly responsible for the unlawful conditions described herein, or caused those unlawful conditions by failing to adopt necessary policies and training programs, and by failing to properly supervise JAIL correction staff.

36. As a proximate result of Defendants' intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological

treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than FIVE MILLION DOLLARS ($5,000,000.00) plus punitive damages and attorney's fees.

## COUNT II
### (Violation of the Eighth Amendment)

37. Plaintiff repeats, realleges, and reiterates each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

38. The Eighth Amendment to the United States Constitution requires that state actors take reasonable measures to guarantee the safety and well-being of inmates in their custody.

39. In light of the totality of the circumstances discussed above, Defendants - acting under color of state law - have subjected Plaintiff to conditions of confinement that expose Plaintiff to a substantial risk of serious physical and psychological harm and, as such, constitute cruel and unlawful punishment in violation of the Eighth Amendment.

40. Defendants are either themselves directly responsible for the unlawful conditions described herein, or caused those unlawful conditions by failing to adopt necessary policies and training programs, and by failing to properly supervise JAIL correction staff.

41. As a proximate result of Defendants' intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial

but not less than FIVE MILLION DOLLARS ($5,000,000.00) plus punitive damages and attorney's fees.

## COUNT III
### (Violation of the Free Exercise Clause of the First Amendment to the United States Constitution)

42. Plaintiff repeats, realleges, and reiterates each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

43. The Free Exercise clause of the First Amendment to the United States Constitution ensures that no state actor shall prohibit the free exercise of religion. That essential First Amendment protection applies even to those individuals who are incarcerated. As such, Defendants are prohibited from restricting Plaintiff from practicing his religion, unless they have a legitimate penological interest for doing so.

44. By preventing Plaintiff from practicing his religion without any legitimate penological interest, Defendants have engaged in violations of the First Amendment.

45. Defendants are deliberately indifferent to this pattern of First Amendment violations. Defendants are also responsible for this misconduct because they have failed to adopt the policies or provide the training and oversight necessary to ensure that inmates are afforded the right to observe their religious faith.

46. Defendants are either themselves directly responsible for the unlawful practices described herein, or caused those unlawful practices by failing to adopt necessary policies and training programs, and by failing to properly supervise JAIL correction staff.

47. As a proximate result of Defendants' intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted,

battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than FIVE MILLION DOLLARS ($5,000,000.00) plus punitive damages and attorney's fees.

**COUNT IV**
**(Violation of the First Amendment, Retaliation)**

48. Plaintiff repeats, realleges, and reiterates each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

49. The First Amendment to the Unites States Constitution ensures that no state actor shall retaliate against any person for engaging in protected speech. In the context of JAILs and prisons, inmates engage in protected conduct when they file grievances. As such, by engaging in a pattern of retaliating against inmates who file grievances - or by enabling such retaliation by condoning it, being deliberately indifferent to it, failing to adopt the policies, or provide the training and supervision necessary to prevent such retaliation - Defendants violate the First Amendment.

50. Defendants are either themselves directly responsible for the unlawful practices described herein, or caused those unlawful practices by failing to adopt necessary policies and training programs, and by failing to properly supervise JAIL correction staff.

51. As a proximate result of Defendants' intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night

terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than FIVE MILLION DOLLARS ($5,000,000.00) plus punitive damages and attorney's fees.

## COUNT V
### (Violation of the Eighth Amendment, Failure to Provide Medical Treatment)

52. Plaintiff repeats, realleges, and reiterates each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

53. Defendants had an affirmative duty to provide and administer health and medical services to Plaintiff.

54. Defendants, as previously alleged, had a duty and obligation to provide Plaintiff and other inmates of the JAIL reasonable and adequate health and medical services.

55. Defendants, on information, had knowledge that the health care they provided and/or were responsible for providing to Plaintiff and other inmates of the JAIL was deficient, inadequate, and incompetent.

56. On information, the health and medical care provided by Defendants, or which they were responsible for providing, to Plaintiff failed to meet an acceptable standard of treatment and care in terms of modern medicine, technology, and current beliefs about human decency.

57. On information, the health and medical care provided by Defendants, or which they were responsible for providing, created an excessive risk to Plaintiff, and the harm to which Plaintiff was exposed was sufficiently serious as to implicate his constitutional rights.

58. On information, Defendants knew that Plaintiff's medical condition constituted a serious need for competent and adequate medical care and treatment.

59. On information, Defendants knew of and ignored the aforesaid excessive risk to Plaintiff's health.

60. The denial of adequate medical care as aforesaid created a condition of urgency, where pain, emotional distress, disability, permanent injury, or death was likely.

61. Defendants' policies, practices, customs, actions, and failures to act constituted deliberate indifference to the serious medical needs of Plaintiff.

62. Defendants were deliberately indifferent to the serious medical needs of Plaintiff.

63. As a direct and proximate result of the foregoing, Plaintiff was subjected to great physical and emotional pain and suffering.

64. Defendants' conduct demonstrated reckless and/or callous indifference to the federally protected rights of Plaintiff.

65. As a direct and proximate result of the foregoing, Plaintiff was subjected to cruel and unusual punishment and denial of adequate medical care and treatment.

66. As a proximate result of Defendants' intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial

but not less than FIVE MILLION DOLLARS ($5,000,000.00) plus punitive damages and attorney's fees.

## COUNT VI
## MONELL

67. Plaintiff repeats, realleges, and reiterates each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

68. Upon information and belief, it was the custom, policy, and practice of the MUNICIPAL DEFENDANTS to tolerate, condone, and encourage constitutional violations, such as those alleged by Plaintiff above, by failing to properly punish, charge, reprimand, and investigate allegations and incidents of misconduct by correctional officers.

69. Employees of the MUNICIPAL DEFENDANTS, such as the CO DOES in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, and that they would receive no reprimand or be punished for their conduct.

70. By failing to supervise, train, and reprimand such correctional officers, MUNICIPAL DEFENDANTS caused the injuries to Plaintiff through the actions and inactions of the CO DOES.

71. By maintaining a de facto policy of automatic indemnification, MUNICIPAL DEFENDANTS caused the injuries to Plaintiff through the actions and inactions of the CO DOES.

72. Upon information and belief, it was the custom, policy, and practice of the MUNICIPAL DEFENDANTS to blatantly ignore complaints and/or widespread allegations of constitutional violations and/or other malfeasance against inmates by the correctional officers in

order to shield the MUNICIPAL DEFENDANTS from receiving any bad press that would be generated from an investigation of misconduct by the correctional officers.

73. Upon information and belief, this custom, policy, and practice of the MUNICIPAL DEFENDANTS to ignore complaints and/or widespread allegations of assault, battery, and other malfeasance against inmates by the correctional officers, created an environment where foreseeable constitutional violations by the correctional officers were rampant, including the violations of Plaintiff's constitutional rights by CO DOES.

74. MUNICIPAL DEFENDANTS' failure to take action against CO DOES involved in this incident and in other similar incidents was part of a custom, practice, and procedure of neglect and deliberate indifference that directly caused the injuries to Plaintiff.

75. As authorized representatives of MUNICIPAL DEFENDANTS, the correctional officers' conduct, such as against Plaintiff, constituted a custom, policy, and practice which renders the MUNICIPAL DEFENDANTS liable to Plaintiff as a "Person" acting under the color of state law.

76. These customs, policies, and practices, which were enforced by the MUNICIPAL DEFENDANTS, were the moving force, proximate cause, or affirmative link behind the conduct causing Plaintiff's injuries.

77. Had WARDEN TOLERICO investigated serious complaints of widespread allegations of constitutional violations prior to April 2020, CO DOES would not have been in a position to violate Plaintiff's constitutional rights.

78. MUNICIPAL DEFENDANTS are therefore liable for violations of Plaintiff's constitutional rights as caused by CO DOES, as described in more detail in the foregoing paragraphs; and Plaintiff has suffered damages therefrom.

79. That, by virtue of WARDEN TOLERICO and other JAIL Supervisors' failure and refusal to adequately investigate CO DOES' actions, acquiescence in CO DOES' conduct, failure to take any remedial action against CO DOES, allowing CO DOES to remain employed as an officers with the JAIL, gross negligence in their supervision of CO DOES, and deliberate indifference to the rights of others by failing to act on information that constitutional rights were being violated by CO DOES, COUNTY, SHERIFF'S DEPARTMENT, JAIL, and WARDEN TOLERICO, which employed these correctional officers and policymakers during the relevant time period, exhibited a de facto custom, policy, or usage of unconstitutional conduct sufficient for the imposition of municipal liability under <u>Monell v. Dept. of Social Services</u>, 436 US. 658 (1978).

80. As a proximate result of Municipal Defendants' intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than FIVE MILLION DOLLARS ($5,000,000.00) plus punitive damages and attorney's fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands the following relief:

A. Under the First Claim for Relief, in the amount of FIVE MILLION DOLLARS ($5,000,000.00) DOLLARS plus punitive damages and attorney's fees;

B.  Under the Second Claim for Relief, in the amount of FIVE MILLION DOLLARS ($5,000,000.00) DOLLARS plus punitive damages and attorney's fees;

C.  Under the Third Claim for Relief, in the amount of FIVE MILLION DOLLARS ($5,000,000.00) plus punitive damages and attorney's fees;

D.  Under the Fourth Claim for Relief, in the amount of FIVE MILLION DOLLARS ($5,000,000.00) plus punitive damages and attorney's fees;

E.  Under the Fifth Claim for Relief, in the amount of FIVE MILLION DOLLARS ($5,000,000.00) plus punitive damages and attorney's fees;

F.  Under the Sixth Claim for Relief, in the amount of FIVE MILLION DOLLARS ($5,000,000.00) plus punitive damages and attorney's fees;

N.  For compensatory damages against all Defendants in an amount to be determined at trial but in no event less than FIVE MILLION DOLLARS ($5,000,000.00));

O.  Such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
       July 26, 2021

**THE RUSSELL FRIEDMAN LAW GROUP, LLP**
*Attorneys for Plaintiff*

By:  */s/Christopher M. Arzberger*
     Christopher M. Arzberger
     400 Garden City Plaza, Suite 500
     Garden City, New York 11530
     Tel: 516.355.9696
     carzberger@rfriedmanlaw.com